IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division

| | | |
|---|---|---|
| MARGARET BOBONICH<br>3207 N. Dover Road<br>Stow, Ohio 44224 | )<br>)<br>) | CASE NO. :<br><br>JUDGE : |
| Plaintiff, | )<br>) | **COMPLAINT : COPYRIGHT** |
| -vs.- | )<br>) | **INFRINGEMENT, PRELIMINARY AND**<br>**PERMANENT DECLARATORY** |
| SUSAN MAYNE<br>3582 W. Glencoe Road<br>Richfield, Ohio 44286 | )<br>)<br>) | **INJUNCTIVE RELIEF, BREACH OF**<br>**CONTRACT, MISAPPROPRIATION OF**<br>**TRADE SECRETS, MONEY DUE** |
| Defendant. | )<br>)<br>)<br>)<br>) | *JURY DEMAND ENDORSED HEREON* |

NOW COMES Plaintiff, MARGARET BOBONICH (hereinafter "Bobonich"), and for her Complaint against SUSAN MAYNE states as follows:

PARTIES, JURISDICTION, VENUE AND LACK OF ARBITRABILITY

1. Bobonich is an individual who is a citizen of the State of Ohio and resides in Stow, Ohio.

2. Defendant, SUSAN MAYNE (hereinafter "Mayne"), on information and belief is a resident and citizen of the State of Ohio with a place of residence as stated in the caption.

3. Jurisdiction of this Court is invoked by 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1338 (a) (jurisdiction over copyright actions).

1

4. Jurisdiction over the claims made herein that are not a matter of federal law remains proper before this Court through 28 U.S.C. §1367, supplemental jurisdiction.

5. Venue before the Northern District of Ohio is appropriate as the parties are all residents of the territory within the Northern District of Ohio and specifically the Eastern Division. Further, because all or a substantial portion of the events giving rise to this Complaint took place in this judicial district, venue is appropriate under 28 U.S.C. §1391.

6. The parties hereto entered into a Settlement Agreement and Release which is attached hereto as Exhibit A ("Settlement Agreement") and fully incorporated herein for all purposes.

7. In said Exhibit A, specifically Provision 14.8, the parties agree to arbitration of claims arising under the Settlement Agreement.

8. Said Provision 14.8 does not allow for the arbitration of all disputes between the parties. Rather it requires arbitration of disputes under the Settlement Agreement.

9. This matter has been filed with this Court as the arbitrability of the claims made herein is highly questionable. The claims stated in this Complaint do not all directly arise from the Settlement Agreement. In fact, none of the claims in this Complaint find their basis solely from the Settlement Agreement, although the Settlement Agreement does provide a partial basis for some or a part of the claims that are found in this Complaint.

10. The overwhelming basis for the claims made in this Complaint are matters that have arisen outside of the Settlement Agreement.

11. Based upon the above, Bobonich files this matter with this Court believing that the American Arbitration Association, without further agreement between the parties, cannot provide full redress of her claims.

12. Based upon the above, venue and jurisdiction before this Court is appropriate for all matters stated herein.

## BACKGROUND AND FACTS

13. Bobonich restates all of the above as if fully rewritten here.

14. The parties are both medical professionals employed by the University Hospitals system (hereinafter "UH").

15. Bobonich is a Certified Nurse Practitioner and Dermatology Nurse Practitioner who specializes in dermatology. Bobonich primarily provides her services to patients through the UH Dermatology office in Fairlawn, Ohio. Bobonich has been with UH since July of 2007.

16. Mayne is also a Certified Nurse Practitioner and concentrates her practice on dermatology. Mayne also provides her services to patients through the UH Dermatology office in Fairlawn, Ohio. Mayne has been with UH since approximately 2016.

17. The parties work together and have worked together since sometime in 2016. The parties also owned and operated together an Ohio limited liability company called Center for Advanced Practice Dermatology, LLC (hereinafter "CAPD"). CAPD was an educational company that created and presented national conferences for nurse practitioners to prepare them to take the national certification examination. The entity is no longer a going concern due to irreconcilable differences between the parties and is the subject matter of the Settlement Agreement.

18. The issues and differences that the parties to this matter had with one another, and that ultimately led to the Settlement Agreement, are not going to be rehashed here but in part provides context for the claims made in this Complaint. Before the Settlement Agreement, since the Settlement Agreement and ongoing through now, Mayne has continually treated Bobonich

with disdain and contempt. Mayne's behaviors have been derogatory towards Bobonich and has demonstrated a great lack of professionalism in what should be a very highly professional setting.

19. Bobonich tried to keep CAPD separate and apart from the parties work at UH.

20. Mayne did not take the same approach, frequently discussing CAPD business with and in the presence other employees of UH, in the office that both Bobonich and Mayne were, and are, located primarily for purposes of their dermatology practice.

21. In so doing, Mayne very likely disclosed trade secrets to third parties without the consent and permission of Bobonich and creating an atmosphere in the office uncomfortable for others.

22. Mayne's anger, negativity, and inappropriate behavior toward Bobonich (and others) not only impacted various CAPD matters but extended into their UH office practice. In fact, it began to impact all interactions between the parties and created a divisive and intolerable work environment.

23. Mayne resorted to unprofessional and unethical acts in an effort to retaliate against Bobonich.

24. Nursing staff reported Mayne's conduct including referring to Bobonich as a "fucking bitch", "pussy" and "a monster" on numerous occasions. Mayne made comments that were physically threatening in nature saying Bobonich was a "cancer" that needed to be cut out.

25. Mayne's negative and vindictive attitude gave rise to unprofessional and unethical behaviors that impacted patient care. Mayne purposefully detained medical equipment (cryotherapy tanks) so that it would delay Bobonich's ability to treat patient during a clinic.

26. As a result of Mayne's negativity and divisive behaviors, Bobonich and other staff felt resigned to leave the UH Dermatology clinic due to the conflict and unsafe feeling in the

4

environment that Mayne created. These behaviors were so disturbing that Mayne's own nurse quit her job because of fear and anxiety associated with "the ongoing negativity from Sue and attempts to create conflict at Fairlawn [office]". Mayne's conduct was reported as "very uncomfortable and intolerable" and fears that she was "going through something personal" and not normal. The nurse recommended "an intervention [would be] put in place to prevent Sue from her disruption..."

27. On information and belief, Mayne has also provided trade secret and proprietary information of Bobonich to third parties that are competitors to Bobonich in the educational space that Bobonich (and formerly CAPD) operates in.

28. Mayne has used, and on information and belief, will continue to use copyrighted materials that do not belong to her and in fact belong to Bobonich.

29. On August 31, 2021, Mayne gave a paid presentation for a conference company known commonly as NPACE. Mayne made the presentation live on that date and the presentation made available for sale on-demand for one year at https://learn.npace.org/products/d2-hair-loss-and-overgrowth#tab-product_tab_speaker_s. Mayne completed a "Speaker BIO Packet" attesting that she either obtained copyright permission for all items submitted for her presentation that are not her original work or that copyright information was not applicable as it was her original work.

30. Throughout the presentation there are copyrighted materials, both photographs and content, which belong to Bobonich being used by Mayne without written permission. Attached hereto as Exhibit B and incorporated herein for all purposes is a copy of the slide presentation at issue with marking added to identify copyrighted materials being used by Mayne improperly and in violation of Bobonich's rights to the same.

31. On June 23, 2022, Mayne gave a paid presentation, Common Skin Conditions: Updates in Dermatology, for the American Association of Nurse Practitioners (AANP) which was

5

also recorded and available for on-demand for 90-days. AANP required written authorization of any materials that are not the presenter's original work.

32. In the presentation, Mayne used copyrighted photo work that belongs to Bobonich without written permission. Mayne expressly attests at the end of her slide presentation that "Unless otherwise noted, all photographs are copyright by Susan Mayne, DNP, FNP-C, DCNP".

33. Mayne has also used the copyrighted material either from or in the presentations that are attached hereto as Exhibit C, D, E, F, and G. This is so whether in the presentation on August 31, 2021, or at other times. Said exhibits are all fully incorporated herein for all purposes.

34. All of the contents of Exhibits C through G are the sole property of Bobonich, and Mayne was never granted written permission to use them, nor was she granted the right to use the copyrighted materials belonging to Bobonich that were used and are a part of Exhibit B.

35. Mayne has used the materials in Exhibits B through H for her own pecuniary gain.

36. All of the copyrighted materials found in Exhibits B through G are hereinafter referred to as the "Copyrighted Work".

37. Mayne included Bobonich's copyrighted photos in her published presentation handouts and placed them in them public domain. Access to the photos at the AANP was 5758 attendees and unknown number for NPACE. Use of copyrighted photos provided in the handouts for Mayne's presentations, both live and on-demand, place further risk for copyright infringement of Bobonich's property. Clinical photos are usually removed from attendee handouts to negate the risk of unauthorized risk of copying photos or exploitation in other works.

38. On or about the 15th of September 2022, Mayne was sent a cease-and-desist letter along with an invoice for the use of the Copyrighted materials. The cease-and-desist letter is

attached hereto as Exhibit H and the invoice at issue is attached hereto as Exhibit H-1. The same are both fully incorporated herein for all purposes.

39. The invoice remains unpaid at the time of the filing of this Complaint.

40. The invoice attached hereto as Exhibit H-1 represents the fair and customary charges for unauthorized, use of the copyrighted works.

41. Mayne's conduct has caused great damage to Bobonich.

<u>Count I – Copyright Infringement under 17 U.S.C. §101, *et eq*</u>

42. Bobonich restates all of the above as if fully rewritten here.

43. The Copyrighted Work is an original work of authorship, and/or is the property of Bobonich by agreement, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws. Bobonich owns the sole and exclusive copyrights in the Copyrighted Work, including without limitation the right to sue for infringement.

44. Mayne's use of the Copyrighted Work comes subsequent to her full and complete assignation of her rights to the same and was done willfully and intentionally.

45. As a result of Mayne's reproduction, distribution, and public display of the Copyrighted Work, Bobonich has been damaged and has been denied the complete value of her rights in the Copyrighted Work.

46. Mayne had access to the Copyrighted Work prior to her commencement of infringing activities and failed to act appropriately in her handling and use of the information.

47. By her actions set forth above, Mayne has infringed and violated Bobonich's exclusive rights in the Copyrighted Work in violation of the Copyright Act, 17 U.S.C. §501.

48. As a result of the above, Bobonich seeks a declaration that Mayne has infringed Bobonich's copyrights in the Copyrighted Work in violation of the Copyright Act.

49. As a further result of the above, Bobonich seeks a declaration that such infringement has been willful.

50. As a result of the above, Bobonich is entitled to actual damages and a disgorgement of Mayne's profits, under 17 U.S.C. § 504(b) and § 504(d), as shall be determined at trial. Bobonich further seeks an awarding of her costs and expenses incurred in this action, including his reasonable attorneys' fees, as appropriate, and an award of interest, including pre-judgment interest, on the foregoing sums.

51. Further Mayne should be permanently enjoined, along with her employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Mayne, from:

    a. directly or indirectly infringing Bobonich's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop or manufacture any works derived or copied from the Bobonich's Copyrighted Work or to participate or assist in any such activity; and

    b. directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of the Copyrighted Work; and

    c. For such other and further relief as the Court may deem just and proper.

### Count II – Preliminary and Permanent Injunctive Relief

52. Bobonich restates all of the above as if fully rewritten here.

53. Bobonich seeks a declaration from this Court pursuant to Federal Rule of Civil Procedure 65, *et seq.*, and consistent with the request made in Count I above that preliminarily and permanently enjoins Mayne from:

    a. Using the Copyright Works for her personal or pecuniary gain in any manner or form;

    b. Using any other intellectual property of Bobonich for the pecuniary or personal gain in any manner or form of Mayne;

    c. Further disseminating strategic or business plans and strategies of Bobonich to any third party, and from using or disseminating any trade secret or proprietary information belonging to Bobonich to any third party or using the same for her personal or pecuniary gain in any manner or form;

    d. Compelling Mayne to return any of Bobonich's intellectual property, proprietary information or trade secret information that she might have in her possession;

    e. Disparaging, harming or defaming Bobonich in any manner or form, whether written or oral, verbal or otherwise;

    f. Requiring Mayne to retract negative, derogatory and inappropriate statements, comments and the like she has made about Bobonich to third parties;

    g. Requiring Mayne to cease treating Bobonich and her fellow employees in an unprofessional manner and creating a toxic work environment for Bobonich.

### Count III – Breach of Contract

54. Bobonich restates the above as if fully rewritten here.

55. Mayne has breached the Settlement Agreement by making disparaging comments about Bobonich, disseminating proprietary and/or trade secret information belonging to Bobonich to third parties, and by using the Copyrighted Works inappropriately and without written permission. All of these actions are not permitted under the terms of the Settlement Agreement.

56. Bobonich has performed as agreed and continues to perform as agreed under the Settlement Agreement.

57. Mayne agreed and consented to the terms of the Settlement Agreement.

58. As a result of the above Bobonich has been damaged in an amount to be determined at trial and includes all reasonable expenses and fees related to bringing and prosecuting this matter, including reasonable attorney fees, and costs of court. Bobonich will continue to suffer damages as the damages are ongoing and continuing. Bobonich further seeks any and all further relief that this Court deems just and proper.

Count IV – Misappropriation of Trade Secrets

59. Bobonich restates all of the above as if rewritten here.

60. Upon information and belief and as outlined above, Mayne has misappropriated the trade secrets of Bobonich for her personal benefit or the benefit of others, or with the intention that she or others benefit, and to the detriment of Bobonich.

61. The actions of Mayne are in direct contravention of the Ohio Trade Secrets Act and thus violate the same.

62. Violations of the Ohio Trade Secrets Act give rise to claims by persons or entities that had such misappropriations taken against them.

63. Based on Mayne's actions and conduct as stated in this Complaint it may be presumed that Mayne has or will misappropriate the trade secrets of Bobonich.

64. The Settlement Agreement prohibits the use of this information by Mayne.

65. As a result of the above Bobonich has been damaged in an amount that will be determined at the trial of this matter and includes all reasonable expenses and fees related to bringing and prosecuting this matter, including reasonable attorney fees, cost of court, punitive damages. Bobonich will continue to suffer damages as the damages are ongoing and continuing. Further Bobonich seeks any and all further relief that this Court deems just and proper.

### Count V – Money Due

66. Bobonich restates all of the above as if fully rewritten here.

67. The invoice attached to the Complaint as Exhibit H-1 remains unpaid.

68. The invoice is for the fair and customary charges for the unauthorized use by Mayne of the copyrighted works as well as failure to acknowledge Bobonich as the author.

69. Mayne is responsible to pay said invoice.

70. Mayne's failure to pay the invoice at issue has damaged Bobonich in the amount of Forty-three Thousand Dollars ($43,000.00), plus the costs of this action, interest thereon including but not limited to interest on any judgment pursuant to this Count, reasonable attorney fees and any further relief that this Court deem just and proper.

WHEREFORE, having fully pled her claims in this matter, Plaintiff demands the damages and relief as stated in each Count of this Complaint stated above, and for any and all further relief that this Court deem just and proper.

    Respectfully submitted,
    PELINI, CAMPBELL & RICARD, LLC

    /s/ *Craig M. Eoff, Esq.*
    CRAIG M. EOFF (#0071002)
    PAUL B. RICARD (#0088207)
    8040 Cleveland Ave., NW

Suite 400
North Canton, OH  44720
Telephone:  (330) 305-6400
Facsimile:   (330) 305-0042
E-mail:  ceoff@pelini-law.com
              pbricard@pelini-law.com

Counsel for Plaintiff

## JURY DEMAND

Plaintiff demands a Jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

/s/ *Craig M. Eoff, Esq.*
CRAIG M. EOFF (#0071002)